Bergenstock v. LegalZoom.Com, Inc., 2015 NCBC 49.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 15686

KELLY BERGENSTOCK; CHARLES
FRANCIS JONES, JR.; BEACON
HOUSE USA INC.; WILLIAM
KENNETH BAKER, as Trustee of the
Cathryn Matthews Braly Revocable
Living Trust; NITA BRALY BAKER;
WARREN KIMBERLY BRALY;
JOSEPH McDOWELL BRALY, JR.;
BRIAN DAVID BRALY; CATHRYN
MICHELLE BRALY; MADISON
MATTHEWS; JEFFREY MATTHEWS
BAKER; MARA KATHRYN BAKER;
and SULLIVAN McDOWELL ELLIS,
a Minor, All as Beneficiaries of the
Last Will and Testament of Cathryn
Matthews Braly, on Behalf of
Themselves and on Behalf of All
Others Similarly Situated,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiffs,

)
)

v.

)
)

LEGALZOOM.COM, INC.,

)
)

Defendant.

)
)

ORDER & OPINION

{1}    THIS MATTER is before the Court on Defendant's Motion to Abate Class Action Complaint in Favor of Prior-Filed Action ("Motion").  For the reasons stated below, the Motion is GRANTED.  The claims brought by Plaintiff Kelly Bergenstock ("Bergenstock") based on her first purchase from Defendant LegalZoom.com, Inc. ("LegalZoom"), and all claims brought by Plaintiffs Charles Francis Jones, Jr., ("Jones") and Beacon House USA Inc. ("Beacon House") are DISMISSED with prejudice.

*Spilman Thomas & Battle, PLLC by Nathan B. Atkinson and Margaret C. Coppley for Plaintiffs Kelly Bergenstock, Charles Francis Jones, Jr., and Beacon House USA, Inc.*

*Carlton Law, PLLC by Alfred P. Carlton, Jr.; Nexsen Pruet, PLLC by R. Daniel Boyce and Thomas J. Ludlam; and Graves Dougherty Hearon & Moody, P.C. by Peter D. Kennedy,* pro hac vice, *for Defendant.*

Gale, Chief Judge.

## I.    PARTIES

{2}     Plaintiff Bergenstock is a resident of Kill Devil Hills, North Carolina. Bergenstock alleges that she made a purchase from LegalZoom on May 11, 2010 ("Bergenstock's First Purchase"), and a second purchase on August 6, 2011 ("Bergenstock's Second Purchase"). The Motion and this Order & Opinion are limited to claims based on Bergenstock's First Purchase. Claims based on Bergenstock's Second Purchase are not affected by this Order & Opinion.

{3}     Plaintiff Jones is a resident of Raleigh, North Carolina. Jones alleges that he made a purchase from LegalZoom on December 3, 2009.

{4}     Plaintiff Beacon House is a nonprofit corporation incorporated and operating under the laws of North Carolina. Beacon House alleges that Patrick Cline, acting on behalf of Beacon House, made a purchase from LegalZoom on June 2, 2009.

{5}     The Motion and this Order & Opinion do not apply to the claims of the remaining named Plaintiffs, and any reference to "Plaintiffs" or "parties" refers solely to Bergenstock, Jones, and Beacon House, and as to Bergenstock, only her first purchase.[1]

{6}     Defendant LegalZoom is a California corporation with principal places of business in Glendale, California, and Austin, Texas.

---

[1] Defendant has by separate motion moved that all claims must be dismissed or arbitrated. That motion will addressed by a separate order.

## II.  PROCEDURAL BACKGROUND

{7}     Plaintiffs' original Complaint was filed on December 23, 2013.  The case was designated a mandatory complex business case and was assigned to the undersigned on February 5, 2014.  LegalZoom filed the pending Motion on February 14, 2014, seeking abatement or dismissal of all of Plaintiffs Jones's and Beacon House's claims and all claims resulting from Bergenstock's First Purchase, based on a prior final judgment approving a nationwide class action settlement in *Webster v. LegalZoom.com, Inc.*, No. BC438637 (Cal. Super. Ct. Apr. 8, 2012).[2]  Plaintiffs filed a First Amended Class Action Complaint in this action on July 9, 2014, that added additional plaintiffs but did not materially change the original Plaintiffs' claims.

{8}     The claims asserted in *Webster* included, *inter alia*, claims for (1) unfair and deceptive practice; (2) violations of the California statutes relating to legal document assistants; (3) unjust enrichment; (4) declaratory relief nullifying contracts for purchase from LegalZoom and injunctive relief against LegalZoom; and (5) unfair, unlawful, fraudulent, and deceitful business acts and practices. (Reply Br. Supp. Mot. Abate Class Action Favor of Prior-Filed Class Action ("*Bergenstock* Reply") Ex. 1-E ¶¶ 56–85 (Third Amended Class Action Complaint for Damages and Injunctive Relief).)

{9}     The Prayer for Relief in *Webster* sought, *inter alia*, (1) restitution of fees paid to LegalZoom, (2) treble penalties, and (3) attorneys' fees and costs incurred by the plaintiffs. (*See Bergenstock* Reply Ex. 1-E, at 20–21.)

{10}     The parties have stipulated that the pending Motion applies to the First Amended Class Action Complaint.  After extensive briefing, the Court heard argument on the Motion on January 9, 2015.  The Motion is now ripe for disposition.

---

[2] When filed, the Motion sought abatement, or alternatively, dismissal of certain claims.  At the time of filing, the judgment approving a nationwide class action settlement in the prior-filed action underlying the Motion was on appeal.  That judgment is now final and non-appealable.  Therefore, LegalZoom seeks dismissal with prejudice of those claims, rather than abatement.

## III.    FACTUAL BACKGROUND

### A. *Webster v. LegalZoom, Inc.*

{11}    In May 2010, Katherine Webster, as executrix of the Estate of Anthony J. Ferrantino and as trustee of the Anthony J. Ferrantino Living Trust, on her own behalf and on behalf of a class of similarly situated California residents, filed the *Webster* lawsuit against LegalZoom in California Superior Court, Los Angeles County. (*See Bergenstock* Reply Ex. 1-B ¶ 10 (Class Action Complaint for Damages and Injunctive Relief).) The lawsuit was assigned to the Honorable William J. Highberger. In August 2010, Webster filed an amended complaint, seeking to represent a nationwide class of LegalZoom estate planning customers. (*See Bergenstock* Reply Ex. 1-C ¶ 8 (First Amended Class Action Complaint for Damages and Injunctive Relief).)

{12}    After more than three days of mediation and weeks of negotiation, the parties reached a tentative settlement and moved for preliminary judicial approval of the settlement. (*See Bergenstock* Reply Ex. 1-G ¶ 4 (Declaration of Robert S. Arns in Support of Joint Motion for Preliminary Approval and Plaintiff's Motion for Class Certification for Settlement Purposes).) In July, 2011, after reaching a proposed settlement with LegalZoom, Webster again amended her complaint to seek to broaden the nationwide class to include all LegalZoom customers, rather than only estate planning customers. (*See Bergenstock* Reply Ex. 1-E ¶ 8.) A party pursuing a competing nationwide class action against LegalZoom in the same jurisdiction (the "*Whiting* Action") filed objections to the proposed settlement. (*See Bergenstock* Reply Ex. 1-L (Objections to Proposed Settlement and Opposition to Parties' Motion for Preliminary Approval of Settlement).) Following a hearing on September 8, 2011, Judge Highberger issued detailed orders regarding his preliminary review of the settlement, approving the class action notice and forms. (*See* Pls.' Supplemental Filing Regarding Def.'s Mot. Abate ("Pls.' Supp.") Ex. 6, at

C-1 to -55 (Reporter's Transcript on Appeal);[3] *Bergenstock* Reply Ex. 1-O (Minute Order); *Bergenstock* Reply Ex. 1-P (Order Conditionally Certifying Settlement Class and Directing Dissemination of Class Notice).) The Superior Court conditionally certified a nationwide settlement class and directed dissemination of notice of the proposed settlement to the class on December 21, 2011. (*See Bergenstock* Reply Ex. 1-P.) Notice to the class was sent in January, 2012. (*See Bergenstock* Reply Ex. 1-K (Declaration of Jennifer M. Keough Regarding Dissemination of Notice and Settlement Administration).)

{13}     The Superior Court subsequently conducted a half-day fairness hearing on April 5, 2012, at which arguments by objectors were heard at length and Judge Highberger questioned the parties' and objectors' counsel in detail on the fairness, adequacy, and reasonableness of the settlement. (*See Bergenstock* Reply Ex. 1-R, at F-1 to -68.) Judge Highberger heard argument covering sixty-eight pages of transcript concerning the value of the economic relief provided, the claims rate, and the attorneys' fees in comparison to the objectors' view of the value of the relief provided to the class. (*See Bergenstock* Reply Ex. 1-R, at F-1 to -68.) He considered the value of the injunctive relief and noted that "[t]he objecting process has been informative to shed light on this case." (*See Bergenstock* Reply Ex. 1-R, at F-64.)

{14}     After concluding the fairness hearing, Judge Highberger entered an order granting final approval of the settlement on April 18, 2012. (*See Bergenstock* Reply Ex. 1-S (Order Granting Final Approval of Class Action Settlement).) In his order, he found that the court had subject matter jurisdiction over the claims and personal jurisdiction over the named plaintiff and the class members. (*Bergenstock* Reply Ex. 1-S ¶¶ 1–2.) He further held that the dissemination of class notice constituted the best notice practicable under the circumstances, fully satisfied the

---

[3] The court reporter later made minimal, nonsubstantive changes to pages C-37, F-7, F-9, and F-32 of the September 8, 2011, and April 5, 2012 transcripts. Those changes can be found in the last eleven pages of exhibit 1-R of the *Bergenstock* Reply, which includes page C-36. *See Bergenstock* Reply Ex. 1-R, at 72–82 (Supplemental Reporter's Transcript on Appeal). Any citations to the *Bergenstock* Reply should be considered as referencing the amended pages, where appropriate.

requirements of due process and California law, constituted "valid, due, and sufficient notice" to all persons entitled to notice, and afforded the class members an adequate time to request exclusion from the class or to object to the settlement. (*Bergenstock* Reply Ex. 1-S ¶ 4(b).) He found that the form of notice fairly, fully, accurately, and adequately advised the class members of all relevant and material information, and fully satisfied the requirements of due process and California law. (*Bergenstock* Reply Ex. 1-S ¶ 4(a).) He further found that Webster and her counsel had "fairly and adequately represented and protected the interests of all members of the Settlement Class throughout" the litigation. (*Bergenstock* Reply Ex. 1-S ¶ 3(c).) He then concluded that the settlement was "fair, reasonable, [and] adequate" and was "in the best interests of the Settlement Class." (*Bergenstock* Reply Ex. 1-S ¶ 5.) The final judgment provided that the settlement agreement released all claims against LegalZoom by the class members and held that "the release and discharge of Released Claims . . . are binding upon Plaintiffs and all members of the Class." (*See Bergenstock* Reply Ex. 1-T ¶ 3 (Judgment).)

{15} The approved settlement class was defined as "all persons who, from September 15, 2005 through June 16, 2011, purchased a legal document or legal document assistant service from LegalZoom.com, Inc." ("Settlement Class"). (*Bergenstock* Reply Ex. 1-T ¶ 4.) This class definition included all North Carolina purchasers of LegalZoom products and services during the defined period, including Bergenstock's First Purchase, Jones, and Beacon House.

{16} Excluded from the Settlement Class were "individuals who submit a valid Request for Exclusion in accordance with the procedures set forth in the Settlement," persons and firms associated with LegalZoom, persons on a terrorist watch list, and other specially excluded persons. (*Bergenstock* Reply Ex. 1-T ¶ 4.) Bergenstock, Jones, and Beacon House were not excluded.

{17} The Released Claims encompassed all causes of actions and claims

asserted or that could have been asserted in the Litigation arising out of the LegalZoom.com website, any materials available on or through the LegalZoom.com website, any disclosures or alleged nondisclosures regarding LegalZoom (including in LegalZoom's marketing or advertising by LegalZoom personnel), LegalZoom's customer service, the unauthorized practice of law (subject to the limitation set forth in the next to last sentence of this paragraph), or the purchase or use of documents prepared through LegalZoom.

(*Bergenstock* Reply Ex. 1-T ¶ 5.) The claims brought by Jones and Beacon House and the claims based on Bergenstock's First Purchase fall within the scope of the Released Claims.

{18} The terms of the Settlement Agreement provided that class members who submit a valid claim would receive sixty days of free enrollment in either LegalZoom Legal Advantage Plus Program (for individuals) or the Business Advantage Pro Program (for businesses) (collectively, "Programs"). (*See Bergenstock* Reply Ex. 1-A, at 11 (Settlement Agreement).) Members of these Programs receive services provided by licensed attorneys, including telephone consultations; review and written summary of legal documents; an annual legal checkup (which would be provided to *Webster* class members in the free sixty-day period), including a written summary and recommendations for legal documents and strategies; a ten percent discount on all LegalZoom products; access to the LegalZoom form library; electronic document storage; and a twenty-five percent discount on legal services not included under the Programs, but provided by a participating firm. (*See Bergenstock* Reply Ex. 1-A, at 11–13.)

{19} The Programs are not available in all states. The Settlement Agreement addressed this issue by providing an alternative cash payment for LegalZoom customers in those states where the Programs are not available ("Alternative Payment Plaintiff(s)"), consisting of "the lesser of (i) $75.00 or (ii) 50% of the current base price of the document the Class Member obtained from LegalZoom or, if the document has been discontinued, 50% of the base price of the document at the time it was discontinued." (*Bergenstock* Reply Ex. 1-A, at 13.)

{20} At the time the proposed settlement was reached, the Programs were not, and are not now, available in North Carolina. As such, the North Carolina Plaintiffs in the underlying case are not able to receive the free legal consultation or have access to the Programs, which are settlement benefits that LegalZoom customers who reside in states where the Programs are authorized receive. North Carolina citizens are included in the Alternative Payment Plaintiffs group. LegalZoom has actively sought to provide the Programs in North Carolina since July 14, 2010. *See* Complaint for Declaratory and Injunctive Relief Ex. 10, *LegalZoom.com, Inc. v. The N.C. State Bar*, No. 11 CVS 15111 (N.C. Super. Ct. filed Sept. 30, 2011). The State Bar has thus far declined to register the Programs. LegalZoom challenged the State Bar's refusal in litigation before this Court and has subsequently pursue the matter in a pending administrative request. *See* Complaint for Declaratory and Injunctive Relief Ex. 16, *LegalZoom*, No 11 CVS 1511 (North Carolina State Bar Authorized Practice Committee Case No. 14PP07 and 14PP08).

{21} "In order to protect the continuing jurisdiction of the [California] Court, prevent a multiplicity of lawsuits, and protect and effectuate the [California] Court's judgment," the *Webster* final judgment enjoined the plaintiffs and class members, and anyone acting on their behalf, including attorneys, who have actual knowledge of the injunction, from instituting or prosecuting any Released Claims against LegalZoom. (*Bergenstock* Reply Ex. 1-S ¶ 7; *Bergenstock* Reply Ex. 1-T ¶ 6.)

{22} No named plaintiff in either the *Webster* case or the *Whiting* Action was an Alternative Payment Plaintiff. No attorney appeared in the case to represent (or attempt to represent) exclusively the interests of the Alternative Payment Plaintiffs. The current Plaintiffs in the action before this Court are Alternative Payment Plaintiffs.

{23} A number of objectors, not including any named Plaintiff in the action in this Court, appealed the final California judgment, making various objections about the settlement's fairness and adequacy. No objections were raised

challenging the fairness of the settlement proceeds that the Settlement Agreement specifically provided to the Alternative Payment Plaintiffs.

{24} The California Court of Appeal considered and rejected the objections, unanimously affirming the trial court's judgment approving the class action settlement. *See Webster v. LegalZoom.com, Inc.*, No. B240129, 2014 WL 4908639 (Cal. Ct. App. Oct. 1, 2014). In affirming the settlement, the court of appeal noted,

> [T]he record before the trial court was extensive and extensively analyzed. . . . From September 2011 through April 2012, all sides debated the deal in four hearings that occupy 139 transcript pages. Throughout these hearings, the trial court examined [the] objections and displayed command of the case's issues. [An objector] claimed the settlement produced too little for the class, but the trial court concluded plaintiffs faced daunting obstacles to victory: the case was not a "lay-down winner" or a "no-brainer winner" for the plaintiff class. . . . [T]here were only eight objectors out of a class of over a million people; two of these objectors sided with LegalZoom.

*Id.* at *3–4.

{25} The time period available to seek additional review of the *Webster* judgment has expired. Therefore, the California Superior Court judgment approving the *Webster* class action settlement is a final, non-appealable judgment.

### B. The Present Action

{26} The First Amended Class Action Complaint in the instant case alleges that Bergenstock, Jones, and Beacon House each made purchases from LegalZoom during the *Webster* class period, September 15, 2005, through June 16, 2011. (*See* First Am. Class Action Compl.("First Am. Compl.") ¶¶ 86, 91, 95 (alleging that Bergenstock purchased on May 11, 2010, Jones purchased on December 3, 2009, and Beacon House purchased on June 2, 2009, respectively).

{27} The Named Plaintiffs seek to represent a class consisting of "[a]ll persons or entities within the State of North Carolina that LegalZoom charged and/or collected fees for legal services and/or document preparation. The Class does not include any persons or entities that have a legally binding arbitration provision in their contract with LegalZoom." (First Am. Compl. ¶ 125.)

{28}   The claims asserted in this case are (1) unauthorized practice of law, (2) unjust enrichment, and (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act. (First Am. Compl. ¶¶ 137–71.)

{29}   The Prayer for Relief in this case seeks (1) restitution of fees paid to LegalZoom, (2) treble damages, and (3) attorneys' fees and costs incurred by Plaintiffs. (First Am. Compl. 34.)

{30}   Plaintiffs did not opt out of the *Webster* nationwide class action, object to the settlement, or appeal from the final judgment.  Plaintiffs concede that the claims subject to this Motion are barred and must be dismissed if the Court extends full faith and credit to the *Webster* judgment.

## IV.   STANDARD OF REVIEW

{31}   The United States Constitution directs that "[f]ull faith and credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State."  U.S. Const. art. IV, § 1.  The United States Supreme Court likewise has held that "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit," *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996), under 28 U.S.C. § 1738 (2014), which provides that "judicial proceedings of any court of any … State … shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts . . . from which they are taken."  *Id.*;  *see also Teague v. Bayer*, 195 N.C. App. 18, 30, 671 S.E.2d 550, 559 (2009) (citing *Matsushita*, 516 U.S. at 374, with approval).

{32}   North Carolina courts apply only a "very limited" scope of review when determining whether a foreign judgment is entitled to full faith and credit, with the inquiry limited to whether jurisdictional and due process considerations were "fully and fairly litigated and finally decided" by the court rendering judgment.  *Boyles v. Boyles*, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983) (citation omitted).  This rule applies equally in class actions.  *Moody v. Sears Roebuck & Co.*, 191 N.C. App. 256, 275–76, 664 S.E.2d 569, 581–82 (2008) (reversing trial court for engaging in "broad

collateral review" of foreign class action judgment); *see also Lohr v. Conseco, Inc.*, No. 1:07CV374, 2008 U.S. Dist. LEXIS 102344, at *6 (M.D.N.C. Dec. 17, 2008) ("[P]articularly in the context of class action judgments, North Carolina courts have adopted a very limited scope of review of foreign courts' determinations of jurisdictional questions and due process conclusions." (quoting *Moody*, 191 N.C. App. at 272, 664 S.E.2d at 580–81) (internal quotation marks omitted)).  The review does not extend to a reconsideration of the merits of either the underlying claims or the specifics of jurisdiction and due process.  Rather, the review is limited to whether jurisdiction and due process were "fully and fairly litigated and finally decided" by the court rendering judgment.  *Boyles*, 308 N.C. at 491, 302 S.E.2d at 793 (citation omitted).  If the foreign court did so, the North Carolina court extends full faith and credit without further inquiry.  *Moody*, 191 N.C. App. at 275, 664 S.E.2d at 582.

{33}    In *Teague v. Bayer*, the North Carolina Court of Appeals reversed the trial court that had ordered additional publication in North Carolina newspapers of a multistate class action settlement reached in a Tennessee court that included North Carolina consumers.  195 N.C. App. at 30, 671 S.E.2d at 559.  Because the Tennessee court had specifically ruled that the notice given to the class complied with Tennessee law and satisfied due process, the Tennessee judgment was entitled to full faith and credit without any further inquiry into the merits of that decision by the North Carolina court.  *Id.*  Likewise, in *Freeman v. Pacific Life Insurance Co.*, 156 N.C. App. 583, 589–90, 577 S.E.2d 184, 188–89 (2003), the court of appeals afforded full faith and credit to a Kentucky judgment resulting from a class action settlement after only a limited inquiry into whether the Kentucky court had "specifically found as fact that jurisdiction was proper and that defendant had provided the required notice." *Id.* at 588, 577 S.E.2d at 187.

{34}    Applying this North Carolina standard, the federal district court in *Lohr v. Canseco, Inc.* held that a North Carolina court's review is restricted to confirming that the foreign court made findings as to notice and due process,

without separately making an independent determination that the foreign court's findings were correct:

> Based on the language of the Final Order in the [California class] action, the Court notes that the California court . . . specifically found as fact that notice was proper and that defendants to the action had provided the required notice. In addition, the California trial court made a specific finding that notice was adequate, and under North Carolina law, North Carolina courts would not undertake additional review of this due process determination.

U.S. Dist. LEXIS 102344, at *22–23.

{35} The North Carolina Court of Appeals has reversed this Court's refusal to extend full faith and credit to an Illinois approval of a national class settlement on this Court's findings that the settlement was unfair and based on inadequate consideration. The appellate court found that this Court had no authority to undertake a "broad collateral review" of the Illinois judgment. *Moody*, 191 N.C. App. at 274–75, 664 S.E.2d at 581–82. Even recognizing legitimate concerns regarding the settlement, the court of appeals recognized that it was "constrained to hold that the trial court erred by refusing to accord full faith and credit," because the Illinois court had already considered issues of notice, due process, and adequacy and had ruled upon them. *Id.* at 275, 664 S.E.2d at 582.

{36} Consistent with this standard, before extending full faith and credit to the California judgment approving the *Webster* settlement, the Court has examined the record to determine that the California court made the requisite findings upon a basis to do so. Particularly, the Court has addressed Plaintiffs' argument that the class they seek to represent was not adequately represented in the course of the settlement process.

## V. ANALYSIS

{37} At hearing on the Motion, with candor that the Court much appreciates, Plaintiffs' counsel narrowed Plaintiffs' challenge to the *Webster* judgment to the following assertion: The members of the *Webster* Settlement Class who were not eligible to receive the settlement benefit of free enrollment in the

LegalZoom Programs (the Alternative Payment Plaintiffs, including North Carolinians) were denied due process because they did not receive adequate representation either by counsel representing their interests or by a named class representative having interests in common with the Alternative Payment Plaintiffs. (*See* Pl.'s Supp. Ex. 6, at C-12 to -13.) Plaintiffs argue that the alternative cash settlement benefit was never considered by the *Webster* Court, but that the Alternative Payment Plaintiffs were a separate subclass of individuals that should have been recognized and adequately represented by both an adequate named representative who was a member of their subclass and an attorney governed by a fiduciary responsibility to represent the interests of that subclass. Plaintiffs argue that due process does not allow giving full faith and credit to the *Webster* judgment without such representation.[4]

{38} Further, Plaintiffs argue that their position should be maintained because there is no evidence in the record that the *Webster* court ever considered the relative value of the proposed payment to the Alternative Payment Plaintiffs. Rather, Plaintiffs urge that the only consideration given by Judge Highberger was as to the value of the benefit that was to be offered to class members who could receive the free legal consultation provided through the Programs (which, at the time, constituted approximately eighty-five percent of the LegalZoom customers). Plaintiffs argue that Judge Highberger's approval of the Settlement Agreement fails to specifically consider the sufficiency of the consideration to be paid to the Alternative Payment Plaintiffs, and therefore that it violates their due process rights. Stated otherwise, they contend that due process does not allow them to be bound to a release that was only given in exchange for "compensation" that was never specifically considered by the approving court.

{39} *Boyles* and *Moody* constrain this Court's reconsideration of the adequacy of the consideration that the California court found adequate to support the settlement. The Court is instead limited to the inquiry of whether the *Webster*

---

[4] LegalZoom contends, but Plaintiffs deny, that Plaintiffs are effectively seeking a ruling that the subclass was entitled to counsel that represented the subclass exclusively.

court fully and fairly considered and then decided whether Plaintiffs were adequately represented. After having reviewed the extensive court records from the *Webster* proceeding, including the transcripts of the court hearings and Judge Highberger's orders and findings, this Court concludes that the *Webster* court made sufficient findings, that the *Webster* judgment is entitled to full faith and credit, and that the issue of adequacy of representation, including that of Alternative Payment Plaintiffs and therefore the Plaintiffs in this action, was fully and fairly litigated and finally decided in *Webster.*

{40}   The *Webster* record demonstrates that the alternative cash payment benefit was agreed to during mediation and presented to Judge Highberger in the initial motion for preliminary approval.  That alternative benefit was defined in the proposed Settlement Agreement and class action notice, which the California courts found to be adequate.  That benefit was then before Judge Highberger during the fairness hearing and subject to challenge by any legitimate objector.  In approving the settlement, Judge Highberger made specific and detailed findings that class counsel fairly and adequately represented and protected the interests of *all* members of the Settlement Class, and that the benefits provided by the Settlement Agreement, including the alternative cash benefit, were fair, reasonable, and adequate and in the best interests of the Settlement Class.  His judgment was affirmed.  The Court would have to make certain negative inferences from Judge Highberger's findings in order to either impose the fiduciary duties Plaintiffs now seek to impose on counsel or find that a further subclass with its own representative was necessary to insure adequate representation.  Even if such negative inferences would be consistent with the *Webster* record, making such inferences is the type of collateral attack on a foreign judgment that *Moody* expressed as inappropriate under the limited North Carolina standards for reviewing foreign judgments.

{41}   Plaintiffs argue that such an inquiry by this Court is, however, not prohibited under this limited standard because Judge Highberger did not specifically consider the adequacy of the alternative cash settlement benefit, and thus that it was not fully and fairly litigated.  They contend that due process

demands that this Court make that inquiry because the consideration of the Alternative Payment Plaintiffs, representing only fifteen percent of the Settlement Class, was so markedly different than that given to other class members. But, the record does not allow for this parsing of the settlement consideration. The full settlement consideration, including the consideration provided to the Alternative Payment Plaintiffs, was before Judge Highberger for his review. The Court cannot infer that Judge Highberger failed to consider the adequacy of representation of or the adequacy of consideration for the Alternative Payment Plaintiffs merely because he did not make express findings in that regard. He made findings that the overall settlement was fair and reasonable and that the Settlement Class had been adequately represented. The Court then must conclude that the issues Plaintiffs now seek to litigate in this Court were fully and fairly litigated and finally decided by Judge Highberger.

{42} There is likewise no reasoned basis for this Court to conclude that the statements in Judge Highberger's approval order were only rote recitals regarding the court's jurisdiction, due process, and the fairness of the settlement to the class, and entered without full deliberation. It is instead that the order was entered only after a substantive fairness hearing as to the underlying claims and defenses. Unlike many class settlements, the *Webster* settlement was contested by objectors at both the trial and appellate level.

{43} The Court, after its review consistent with the controlling North Carolina standard, concludes that the issue of adequacy of representation for Alternative Payment Plaintiffs in the *Webster* settlement and the adequacy of the consideration they received in exchange for their release of claims were issues which were fully and fairly litigated by the California courts. The California judgment is therefore entitled to full faith and credit and is binding on Plaintiffs and this Court.

## VI.    CONCLUSION

{44} For the foregoing reasons, it is ORDERED that

1.  Defendant's Motion to Abate Class Action Complaint in Favor of Prior-Filed Action is GRANTED.
2.  The claims related to Plaintiff Bergenstock's First Purchase and all claims brought by Plaintiffs Jones and Beacon House are DISMISSED WITH PREJUDICE.

This the 15th day of May, 2015.

/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
   for Complex Business Cases